JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Dr. Vijay Vasudev; Dr. Kanchan Vasudev; Dr. Manu Vasudev; and Tarun Vasudev

## DEFENDANTS
MMG Group of USA, LLC; Vector Global Holding Inc.; Greene County Properties, LP; Rohit Punj; Shivani Punj; Madhu Punj; and Eileen Zullo

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, Email and Telephone Number)*
Michael J. Sullivan & Glen A. Sproviero; Ellenoff Grossman & Schole LLP, 1345 Avenue of the Americas, 11th Floor, New York, NY 10105 (212) 370-1300 msullivan@egsllp.com; gsproviero@egsllp.com

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

| | | |
|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☐ 3 Federal Question *(U.S. Government Not a Party)* | |
| ☐ 2 U.S. Government Defendant | ☒ 4 Diversity *(Indicate Citizenship of Parties in Item III)* | |

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | Product Liability | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander | Pharmaceutical Personal Injury Product Liability | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans | ☐ 340 Marine | Injury Product Liability | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | | | ☐ 790 Other Labor Litigation | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding    ☐ 2 Removed from State Court    ☐ 3 Remanded from Appellate Court    ☐ 4 Reinstated or Reopened    ☐ 5 Transferred from Another District *(specify)*    ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC 1332(a) (Diversity Jurisdiction)
Brief description of cause:
Fraud and Fraudulent Inducement/Business Partnership Dispute

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.C.v.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE
10/16/2015

SIGNATURE OF ATTORNEY OF RECORD
/s/ Michael J. Sullivan      /s/ Glen A. Sproviero

**FOR OFFICE USE ONLY**

RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DR. VIJAY VASUDEV; DR. KANCHAN VASUDEV; DR. MANU VASUDEV; AND TARUN VASUDEV, | Civil Action No.: |
| Plaintiffs, | **COMPLAINT AND JURY DEMAND** |
| v. | |
| MMG GROUP OF USA, LLC; VECTOR GLOBAL HOLDING INC.; GREENE COUNTY PROPERTIES, LP; ROHIT PUNJ; SHIVANI PUNJ; MADHU PUNJ; AND EILEEN ZULLO | *Document filed electronically* |
| Defendants. | |

Plaintiffs Dr. Vijay Vasudev, Dr. Kanchan Vasudev, Dr. Manu Vasudev and Tarun Vasudev ("Plaintiffs"), by and through their counsel, Coughlin Duffy LLP, by way of Complaint against MMG Group of USA, LLC; Vector Global Holding Inc.; Greene County Properties, LP; Rohit Punj, Shivani Punj; Madhu Punj, and Eileen Zullo ("Defendants"), allege and say:

### PARTIES

1.     Plaintiffs Dr. Vijay Vasudev, Dr. Kanchan Vasudev, Dr. Manu Vasudev, and Tarun Vasudev are residents of House No. 6, Cool Road, Jalandhar, Punjab 144001, India.

2.     Defendant MMG Group of USA, LLC is a Pennsylvania Corporation managed and controlled by Rohit Punj of Ringoes, New Jersey.

3.     Vector Global Holdings Inc. is a New Jersey Corporation managed and controlled by Rohit Punj, and in which Madhu Punj has an ownership interest.

4.     Greene County Properties LP is managed and controlled by Rohit Punj, Madhu Punj and Eileen Zullo.

5.     Rohit Punj is a natural person with a residence of 56 Milestone Drive, Ringoes, New Jersey 08551. Rohit Punj is the son of Madhu Punj and Subhash Chander Punj (deceased).

6.     Shivani Punj is a natural person with a residence of 56 Milestone Drive, Ringoes, New Jersey 08851.  Shivani Punj is the wife of Rohit Punj.

7.     Madhu Punj is a natural person with a residence of 56 Milestone Drive, Ringoes, New Jersey 08551. Madhu Punj is widow of Subhash Chander Punj.

8.     Eileen Zullo is a natural person with a residence of 1915, Mary Street, Pittsburgh, Pennsylvania 15301. Eileen Zullo is CEO of CGI Group of Companies, a Pennsylvania based company.

## STATEMENT OF JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because this is a controversy between citizens of a state and citizens or subjects of a foreign state and the amount in controversy exceeds $75,000.00.

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391(a) as this District is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

11.     This Court has personal jurisdiction over the Defendants because the Defendants Rohit Punj, Shivani Punj and Madhu Punj are residents of New Jersey, and the other Defendants transact business in New Jersey directly or through other persons or entities.

12.     The Court has personal jurisdiction over Defendant MMG Group of USA, LLC because MMG Group of USA, LLC effectively maintains an office and transacts business in this jurisdiction by the fact that Rohit Punj acts as the de facto managing member of MMG Group of USA, LLC from his residence at 56 Milestone Drive, Ringoes, New Jersey 08551

## FACTS COMMON TO ALL COUNTS

### Background

13.    Plaintiffs Dr. Vijay Vasudev, Dr. Kanchan Vasudev and Dr. Manu Vasudev reside in Punjab, India and are physicians engaged in a busy medical practice at various medical facilities located in Punjab, India which are owned and operated by the Plaintiffs.

14.    Defendants Rohit Punj, Shivani Punj and Madhu Punj are Indian Americans closely related to the Plaintiffs. For instance, defendant Rohit Punj is the nephew of Plaintiff Dr. Kanchan Vasudev.

15.    Defendant Madhu Punj is a sister-in-law of Plaintiff Dr. Kanchan Vasudev and was married to Dr. Kanchan Vasudev's real elder brother, Subhash Chander Punj (now deceased).

16.    On or about January 2012, and continuing on various dates thereafter, Rohit Punj contacted Dr. Vijay Vasudev from Rohit Punj's home in New Jersey and proposed that Rohit Punj's family (Rohit Punj, Shivani Punj and Madhu Punj) and Dr. Vasudev's family (Dr. Vijay Vasudev, Dr. Kanchan Vasudev, Dr. Manu Vasudev and Mr. Tarun Vasudev) jointly invest in various ventures located in New Jersey and Pennsylvania.

17.    In the hopes of inducing such a business relationship, Rohit Punj informed the Plaintiffs that he was working as a senior executive (COO) with a U.S. based company (CGI Group of Companies) and that his annual income was more than $500,000. He maintains a palatial house and a fleet of cars including a BMW and a Lamborghini. On numerous occasions, during telephone conversations and meetings with the Plaintiffs, Rohit Punj emphasized his experience, expertise and business acumen. He told Plaintiffs that he had used these qualities to

{00389179.DOCX.1}

3

achieve lucrative profits in various businesses of which he was either currently associated or had served to found and develop.

18.     In addition to representing himself as a highly successful business person, Rohit Punj used his close relationship with the Plaintiffs to forge trust between the parties.

19.     Rohit Punj specifically demanded that the Plaintiffs not disclose or discuss any information concerning the proposed investments with family members or other third parties.

20.     As part of the proposed joint venture, Rohit Punj proposed that the Punj family (Rohit Punj, Shivani Punj and Madhu Punj) would invest 50% of necessary capital and the Vasudev family (Dr. Vijay Vasudev, Dr. Kanchan Vasudev, Dr. Manu Vasudev and Tarun Vasudev) would invest the other 50% of necessary capital money into the various business ventures.  Rohit Punj would manage the New Jersey/Pennsylvania operations of the various ventures.

21.     After continued sales pitches and reassurances by Rohit Punj that he would protect Plaintiffs' interests, Dr. Vasudev, on behalf of himself and the other Plaintiffs, agreed to enter into the joint ventures proposed by Rohit Punj.

22.     Plaintiffs' role in all four ventures was to supply funds, sometimes in the form of investment, other times in the form of covering supposed losses, sometimes in the form of loaned money.

23.     To date, Plaintiffs' collective investments in the four entities exceeds $700,000.

24.     As set out in greater detail below, at various times and in various manners Rohit Punj defrauded the plaintiffs by making false claims and providing them with false documents in order to induce their investments in the various ventures, made false statements to them and provided them with fabricated documents in order to defraud them out of profits from the

various ventures to which they were entitled, failed to provide documentation regarding their investments which hid Rohit Punj's fraud, breached his fiduciary duties to them and otherwise converted funds that rightfully belonged to the plaintiffs.

25.     Shivani Punj, the wife of Rohit Punj, aided and abetted her husband and engaged in conspiratorial acts with him in connection with the wrongful acts as described below.

26.     Shivani Punj produced false spreadsheets upon which the plaintiffs relied in making crucial investment decisions, and upon which they relied in continuing to make payments to cover alleged losses.

27.     Shivani Punj was intimately involved in every aspect of the operations of the ventures described below, including personally signing checks to employees and third party vendors, monitoring, assessing, and reporting the alleged financial condition of the various ventures to the plaintiffs and engaging in strategic planning for the various ventures.

28.     At various times and in various manners, Shivani Punj represented herself to be a "partner" in various of the ventures as set out below.

29.     All essential high-level business functions and decisions in connection with the ventures were taken in complete collaboration between Rohit Punj and Shivani Punj.

30.     At all times, Rohit Punj demanded that Shivani Punj be involved in and present for any high level discussions between the Plaintiffs and the Defendants.

31.     As set out in greater detail below, during the period of first half of 2012 to June 2014 the Plaintiffs paid significant amounts of money to invest in four separate businesses located in New Jersey and Pennsylvania.

32.     The four entities, as set out in greater detail below are:

- Greene County Properties, LP, which owns a property located at 1660 High Street, Franklin Township, Pennsylvania.

- MMG Group of USA, LLC (an entity 50% owned by New Jersey corporation Vector Global Holding Inc.) that operated two Muscle Maker Grill Franchise locations in Pittsburgh, Pennsylvania.

- Vector Global Holding Inc., A New Jersey Corporation that owns and operates Hydrogen Gas Storage Trailers (10 Units) and a cooling tower located at different places.

- 30 Burgers at Princeton, LLC, which operates a restaurant in Princeton, New Jersey.

The entirety of the collective investments of the Plaintiffs in the various schemes or entities promoted by the Defendants was, for reasons set out in greater detail below, the result of the overarching plan to fraudulently induce Plaintiffs into these investments, and in addition to any other relief sought herein, Plaintiffs should be entitled to a return, at a minimum, of all their investment monies, with interest.

**High Street Property**

33.    On or about July 12, 2012, Rohit Punj arranged for the execution of a document entitled "High Street Property Agreement".

34.    The parties to the High Street Property Agreement were Vector Global Holding Inc., a New Jersey Corporation listing a main business address in Whitehouse Station, New Jersey, and owned by Defendant Madhu Punj (the mother of Rohit Punj), Plaintiff Manu Vasudev and Plaintiff Tarun Vasudev, with respective "ownership" interests as follows:  Vector Global Holding - 50%;   Manu Vasudev - 25%; Tarun Vasudev - 25%.

{00389179.DOCX.1}

35.    The High Street Property Agreement purports to be for the purpose of creating some form of joint ownership of the commercial property located at 1660 East High Street, Franklin Township, Pennsylvania.

36.    The High Street Property Agreement sets the "Property Price" at $225,000, and sets forth that the "investment amounts" committed by the "owners" are Vector Global Holding Inc. at $112,500, Manu Vasudev at $56,250, and Tarun Vasudev at $56,250.

37.    In connection with the purchase of 1660 East High Street, the Plaintiffs Manu Vasudev and Tarun Vasudev, collectively, made a payment of $112,500 toward the property purchase price, along with closing costs in the amount of $12,237.

38.    By entering into the transaction arranged by Rohit Punj, memorialized by the High Street Property Agreement, Plaintiffs understood from representations of Rohit Punj that they were obtaining actual property interests in the property itself.

39.    Furthermore, Plaintiffs understood from representations of Rohit Punj that as a result of their collective ownership of 50% of the project, they would be entitled to receive 50% of profits generated from the commercial property, such as a beneficial interest in rent (after reasonable costs and expenses to operate the property).

40.    Instead of arranging for the Plaintiffs to become true owners of the property and instead of operating the commercial property in a good faith manner consistent with his fiduciary duties to the Plaintiffs, Rohit Punj engaged in the following fraudulent scheme:

41.    Rohit Punj took the Plaintiffs' investment monies, including costs, as referred to above.

42.    Rohit Punj arranged for the property to be purchased in the name of Greene County Properties, LP.

{00389179.DOCX.1}

43. Upon information and belief, the buyer was listed as Eileen Zullo / Green County Properties, LP.

44. Furthermore, a commercial lease agreement was signed, dated December 24, 2012, between Greene County Properties, LP, the new owner of the High Street Commercial Property by Rohit Punj, and the tenant at the High Street Commercial Property, CGI International, by Eileen Zullo (CEO) of the CGI Group of Companies.

45. Rohit Punj then arranged for payments at the property from CGI in an amount well in excess of $1,600 per month, and arranged for other tenants to be present at the property paying rent.

46. Rohit Punj falsely claimed to the Plaintiffs, however, that their 50% share of the rent was only $800 per month when it was in fact a higher figure.

47. In summary, Rohit Punj defrauded the Plaintiffs in connection with the High Street Property Agreement by failing to arrange to establish them as actual property owners, by arranging to have the actual purchaser of the property be an entity associated with Eileen Zullo, an individual with whom he is associated professionally, and by the acts and omissions set forth in Paragraphs 45 and 46.

48. Upon information and belief, Rohit Punj also arranged to obtain a loan secured by the property which would act as an encumbrance on the property, without notice to the Plaintiffs and without the agreement of the Plaintiffs, thereby fraudulently reducing their interest in the property.

49. Upon information and belief, Rohit Punj converted the proceeds of the loan to his own benefit, and did not distribute or share the loan proceeds with the Plaintiffs.

**Muscle Maker Grill Franchises**

50.     In or about 2012, Rohit Punj approached the Plaintiffs with a proposal to invest in Muscle Maker Grill franchises at two locations:   one in New Jersey; and other at 2767 East Carson Street, Pittsburgh, Pennsylvania.

51.     The parties engaged in discussions concerning the Defendant's investment proposal, which took place at the Defendant's New Jersey home when Plaintiffs Dr. Vijay Vasudev and Dr. Kanchan Vasudev visited the United States in 2012.   The discussions continued subsequently via telephone and email communications after the Plaintiffs returned to India.

52.     In exchange for investing in these franchises, Rohit Punj promised the Plaintiffs that he would make the Plaintiffs, collectively, 50% owners in these franchises.   An entity, Vector Global Holding Inc., would own the remaining 50% ownership of the franchises.

53.     Vector Global Holding Inc. is a corporation with an agent address and principal place of business listed as 531 Route 22 East, Whitehouse Station, New Jersey 08889.

54.     Upon information and belief, Vector Global Holding Inc. itself is owned by Defendant Madhu Punj, the mother of Defendant Rohit Punj.

55.     In addition to having a fifty percent (50%) ownership in these two Muscle Maker Grill franchises, the Plaintiffs were each to have a 12.5% share and enjoy profits from the enterprise in exchange for their investment, Rohit Punj informed the Plaintiffs that he would require a sum of $30,000 as part of the Plaintiffs' 50% share of licensing costs for the two MMG franchises to be opened in New Jersey and Pennsylvania.

56.     The Plaintiffs, collectively, transferred $239,000 (constituting their 50% share for the MMG franchises) into accounts which were in the sole control and custody of the

{00389179.DOCX.1}

Defendants. $159,000 were transferred into Wells Fargo Bank, 420 Montgomery Street, San Francisco, California 94104. (Account No. 6685058882) and $80,000 into Citizens Bank, 2801 E Carson St., Pittsburgh, Pennsylvania (Account No. 6238236578). Upon information and belief, the $159,000 in funds transferred to California was converted fraudulently by Rohit Punj to his own use.

57.     More specifically, Rohit Punj fraudulently obtained from Plaintiffs $5,000 as a transfer fee of license for a franchise in New Jersey that was never opened.  Rohit Punj further charged Plaintiffs $17,500 for a 25% share of two licenses for an MMG franchise in California. Through the current date, Plaintiffs have not been made partners in any MMG franchise in California, and, therefore, a sum of $37,500 in unused licensing fees ($15,000 unused NJ MMG license along with the $5,000 unused NJ License transfer fee, along with the $17,500 unused California MMG license fees) remain under the control and in the possession of Rohit Punj.

58.     Rohit Punj opened a small MMG outlet inside an LA Fitness location in Pittsburgh in the month of January 2014, and charged Plaintiffs approximately $50,000 towards Plaintiffs' 50% share in the outlet.

59.     None of the Plaintiffs, nor their extended families in the United States were invited or allowed to attend the opening ceremonies of MMG franchises in Pennsylvania.

60.     Upon information and belief, the sole reason for Defendants' failure to invite and, rather, to prohibit Plaintiffs and family members from attending these opening ceremonies was to conceal the fact that the Plaintiffs had never been made owners of the franchises as had been promised and prevent the Plaintiffs from realizing the identities of the true owner of the franchises, and to hide the truth about the amount of real investments in these two locations.

{00389179.DOCX.1}

61.    The MMG franchises continued to operate from May 2013 to August 2014. Throughout this time, the only information Defendants provided the Plaintiffs, relative to these businesses, was in the form of spreadsheets prepared by the Defendants, showing monthly losses. No other business records were furnished to the Plaintiffs.

62.    Plaintiffs relied solely on representations made by Rohit Punj and upon the information provided in spreadsheets prepared by the Defendants.

63.    For a few months from the start of the MMG business in Pittsburgh from May of 2013, the defendant Rohit Punj assured the Plaintiffs that the business was operating robustly.

64.    Although he continued to assure the Plaintiffs that the franchises were doing well, Rohit Punj repeatedly presented Plaintiffs with spreadsheets requesting additional sums of money to cover losses allegedly incurred by the businesses.

65.    At the insistence of Rohit Punj, Plaintiffs paid approximately $51,000 to MMG Group USA, LLC during the period May 2013 to June 2014 to cover alleged losses.

66.    On numerous occasions Plaintiffs requested the Defendants to furnish essential business records, including but not limited to audited accounts, bank documents, tax forms and ownership documents. The Defendants refused to comply with any such requests and failed to produce the requested business records. Each request for information by the Plaintiffs was routinely deferred, dismissed or ignored.

67.    At one point, Rohit Punj falsely informed the Plaintiffs that because he was "spending too much time" in establishing/managing MMG restaurants, his employer, CGI International was threatening to reduce his salary by 20%.

{00389179.DOCX.1}

68.     In supposed support of his false claim, Rohit Punj arranged to have an insider of CGI, CEO Eileen Zullo demand that a 20% share of the MMG franchise be transferred to Defendant Eileen Zullo.

69.     This transaction and the documents surrounding it were fabricated for purposes of reducing Plaintiffs' interest in the project and increasing the interest of Defendants who conspired with and aided and abetted each other to defraud the Plaintiffs.

70.     After repeated, unsuccessful attempts to obtain business records for the MMG franchises, and faced with ongoing demands for additional sums of money to cover losses, the Plaintiffs Dr. Vijay Vasudev and Dr. Kanchan Vasudev determined their only recourse was to visit the United States where they could meet with Rohit Punj and review the business records which the Defendants had failed to supply.

71.     Rohit Punj agreed to meet with the Plaintiffs when they visited the United States and further agreed to have all the requested information available for Plaintiffs to review.

72.     The Plaintiffs, Dr. Vijay Vasudev and Dr. Kanchan Vasudev arrived in the United States on July 18, 2014. While in New Jersey, the Plaintiffs made repeated efforts to schedule meetings with Rohit Punj to discuss issues regarding their investments and to obtain all the documents concerning their joint businesses.  Rohit Punj repeatedly denied Plaintiffs' request to have a meeting, citing his busy schedule as reason for his unavailability to meet. Rohit Punj did not furnish any of the documents requested by the Plaintiffs.

73.     In or about July and August of 2014, Plaintiffs Dr. Vijay Vasudev and Dr. Kanchan Vasudev visited the two operating MMG restaurants in Pittsburgh and observed that the level of investment and refurbishment in the two facilities was not commensurate with Rohit Punj having invested approximately $250,000 to match the investment of the Plaintiffs.

74.     Rather, it was apparent that the limited renovation/outfitting work had been funded entirely out of the Plaintiffs' investments, and that Rohit Punj had falsely claimed to have invested $250,000 when in fact he had invested little or nothing.

75.     When faced with Rohit Punj's claim that the MMG Group of USA, LLC restaurants had incurred nothing but losses, Plaintiffs asked for tax forms with which they could receive a tax advantage against losses.  In addition, the Plaintiffs requested documentation reflecting their partnership in the MMG franchise business. Defendant, once again, refused to provide Plaintiffs with the requested papers.

76.     Eventually Rohit Punj admitted that Plaintiffs were never made members of the MMG Franchise business.  He referred them to his CPA, Mr. Anil Tandon.

77.     When Plaintiffs contacted Mr. Tandon, Mr. Tandon confirmed that the Plaintiffs had not been given an interest in the MMG Franchise business.  Rohit Punj had never arranged to make Plaintiffs formal members of MMG Group of USA, LLC as he had promised.

78.     Defendant Rohit Punj held $42,500 as escrow money belonging to the Plaintiffs. Rohit Punj promised that he would hand over the check of $42,500 to the Plaintiff Dr.Vijay Vasudev before they returned to India. Only after repeated demands did he return $37,500.  To date $5,000 remains due and payable.

79.     Plaintiffs demanded from Defendant Rohit Punj that either he should provide all the papers regarding MMG investments, especially two bank account statements where the funds were transferred from the Vasudev family in India, or return the entire amount invested in the MMG businesses with interest. Defendant Rohit Punj has refused to comply.

**Vector Global Holding Trailers**

80.     Vector Global Holding Inc. formed as a New Jersey Corporation with an agent address of 531 Route 22 East, Whitehouse Station, New Jersey 08889.  Vector Global Holding Inc. has an interest in the MMG Franchise locations, the Hydrogen Gas Storage Trailers (10 Units) with cooling tower, and the High Street Property.

81.     In or about 2012, Rohit Punj informed Plaintiffs that he, his wife Shivani Punj and his Mother Madhu Punj were the owners of ten (10) units of Trailers. These units were used for storing hydrogen gas and included a cooling tower.

82.     Rohit Punj further informed the Plaintiffs that these ten (10) units were being rented out to power plants at different locations and generating a monthly rental income of $6,464.

83.     Rohit Punj proposed that the Plaintiffs invest in these ten (10) units of Vector Global Trailers and offered a twenty five percent (25%) share to the Plaintiffs. According to this proposal the Plaintiffs would be entitled to receive a total rental income of $1,616 representing their twenty five percent (25%) share.

84.     The amount of investment required from the Plaintiffs by Rohit Punj was arrived at as a result a spreadsheet supplied by Rohit Punj to the Plaintiffs. This spreadsheet represented the market price of the ten (10) trailers and the cooling tower as $1,015,000, and his cost price for the equipment as $891,233.

85.     The parties settled on an agreed upon market price of $900,000.

86.     The parties agreed that the Plaintiffs would invest a total of $225,000 which would represent their twenty five percent (25%) share in the investment (based the $900,000

market price). This twenty five percent (25%) share was to provide Plaintiffs a monthly income of $1,616 based upon Rohit Punj's representations.

87.     On Rohit Punj's directions, Plaintiffs transferred $100,000 to the account of Defendant Madhu Punj, the registered owner of Vector Global Holding Trailers. Additionally, Plaintiffs transferred $75,000 to a Vector Global Holding Inc. account. This amount of $175,000 was paid by the Plaintiffs as an advance against the total investment of $225,000 representing their twenty five percent (25%) share in the business.

88.     Rohit Punj subsequently proposed that the parties falsely report the cost of the Trailer equipment as $300,000 rather than $900,000. Plaintiffs were concerned that Rohit Punj was proposing a false reporting for tax reasons.

89.     Faced with a request by Rohit Punj to participate in a tax fraud, and concerned over what price Plaintiffs would receive if the ten trailers and cooling tower were to be sold at a later date, Plaintiffs demanded that Rohit Punj provide them with the documents related to the business, including but not limited to business assets, purchase vouchers/bills, documents concerning refurbishing, licensing costs, costs that Rohit Punj had spent on the equipment ($891,233) and a report from the approved appraiser. Rohit Punj failed to provide any of the requested documents.

90.     Rohit Punj informed the Plaintiffs that they would be receiving $1,285 per month in rental income, not $1,616. This reduction in rental income was attributed to the fact that Rohit Punj had only received $175,000 as an advance from the Plaintiffs which represented approximately 19.5% ownership interest in the business venture.

91.     Despite Plaintiffs' repeated request for these documents, Rohit Punj has refused to provide any such information.  To date, Plaintiffs have received no photographs or documents

whatsoever, from Rohit Punj as to the location and condition of these trailers and cooling tower and whether, in fact, these trailers and tower even exist.

92.     In July and August 2014, when the Plaintiffs, Dr. Vijay Vasudev and Dr. Kanchan Vasudev visited the United States, they learned that the total cost of the ten (10) trailers was not nearly $1,000,000 as reported by Rohit Punj, instead, it was approximately $300,000.

93.     After requests to Rohit Punj to provide essential documents pertaining to this investment were repeatedly denied, Plaintiffs informed Rohit Punj that they wanted to withdraw their investment and requested Rohit Punj to return the Plaintiffs' full investment of $175,000.

94.     Rohit Punj's fraudulent claims that the market price for buying and restoring the ten (10) trailers to store hydrogen gas was worth $900,000 was a material misrepresentation in order to induce the Plaintiffs to invest $225,000 and upon which Plaintiffs' relied to their detriment.

95.     Further, if the trailers' market value is $300,000 and not $900,000 as represented by Rohit Punj, the Plaintiffs' share of $175,000 in the investment would represent approximately 58% ownership in the business, entitling them to receive 58% of the total rental income or $3,770 per month respectively.

**30 Burger Investment**

96.     On or about early 2014, Rohit Punj proposed that the Plaintiffs invest in a 30 Burger Franchise located at Princeton, New Jersey. Plaintiffs made the full payment of $109,500 to Rohit Punj by June 30, 2014 but insisted that this money be treated as a loan to Rohit Punj. Rohit Punj agreed and also agreed to pay the Plaintiffs 7% annual interest which amounts to $638.75 per month.

{00389179.DOCX.1}

16

97.     More specifically, the $638.75 fixed monthly income was based upon a calculation of seven percent (7%) interest on the Plaintiffs' loan of $109,500 effective July 2014.

98.     Defendant Rohit Punj did not begin making the fixed monthly interest payments to the Plaintiffs until September 2014 and owes Plaintiffs $1,277.50 for monthly income for July and August 2014.

99.     Plaintiffs have repeatedly requested Rohit Punj to provide them with documentation confirming their loan of $109,500 as well as the precise plans for the return of the principal amount. Further, Plaintiffs have made repeated efforts to obtain a Form 1099 for filing of 2014 taxes. Rohit Punj has failed to provide any of these requested documents.

## FIRST COUNT

## MMG Group of USA, LLC – Derivative Action

100.    Plaintiffs are or should be deemed members/shareholders of MMG Group of USA, LLC.

101.    Throughout the existence of the LLC, as set out in greater detail above, Defendants have acted to waste the assets of the corporation, to convert funds to their own use that rightfully belong to the corporation, to breach their fiduciary duty to the corporation and the other corporate shareholders and in their management of and dealings with the corporation have otherwise acted arbitrarily, vexatiously, and in bad faith.

102.    Therefore, the corporation has valid causes of action against the Defendants to recover corporate losses.

103.    In light of the relationship between and among the Plaintiffs and Defendants, and in light of the fact that the Defendants are the subject of Plaintiffs' demands, it would be futile to demand that the corporation take action against the Defendants.

104.    Wherefore, Plaintiffs on behalf of the corporate entity hereby demand that the Defendants return all assets to the corporate entity and to make the corporate entity whole for all losses.

105.    Plaintiffs demand that the corporate entity distribute any such recovered losses pursuant to the relative ownership interests of the shareholders and that the Defendants pay the corporate entity punitive damages, and that the Defendants reimburse Plaintiffs for Plaintiffs' attorney's fees pursuant to applicable statute.

**WHEREFORE,** Plaintiffs hereby demand:

1. Compensatory damages,

2. Punitive damages,

3. Return to the corporation of all investments of Plaintiffs with interest,

4. Attorneys' fees, court costs and other relief as this Court deems just.

**SECOND COUNT**

**MMG Group of USA, LLC, Oppressed Minority Shareholder**

106.    Plaintiffs are or should be deemed members of MMG Group of USA, LLC.

107.    Defendant Rohit Punj, as managing member, has acted illegally, fraudulently, and in a manner that is oppressive and was, is, or will be directly harmful to the Plaintiffs.

108.    Therefore, pursuant to N.J.S.A. 42:2C-48 said corporate entity should be subjected to dissolution, and the assets thereof distributed accordingly.

**WHEREFORE,** Plaintiffs hereby demand:

1. Dissolution of MMG Group of USA, LLC,

2. Equitable Distribution of Assets,

3. Compensatory Damages,

4.   Return to the Plaintiffs all investments by Plaintiffs with interest,

5.   Punitive damages,

6.   Attorneys' fees, court costs and other relief as this Court deems just.

### THIRD COUNT

### In the Alternative
### MMG Group of USA, LLC, Fraudulent Inducement and Fraud

109.   Defendant Rohit Punj fraudulently induced the Plaintiffs to invest money allegedly to become members of MMG Group of USA, LLC for purposes of obtaining and operating various restaurant franchises.

110.   Rohit Punj had no intention of making them valid members of the LLC, caused them to pay monies that were converted by Rohit Punj, and otherwise defrauded them in the transaction.

**WHEREFORE,** Plaintiffs hereby demand:

1.   Compensatory damages,

2.   Punitive damages,

3.   Return of all investment monies with interest,

4.   Attorneys' fees, court costs and other relief as this Court deems just.

### FOURTH COUNT

### High Street Property Agreement Contractual Claims

111.   Pursuant to the High Street Property Agreement, Plaintiffs were entitled to be the recipients of 50% of the profits generated.

112.   Defendants Rohit Punj and Eileen Zullo have conspired and aided and abetted each other in diverting profits properly due to the Plaintiffs by fraudulently misrepresenting what profits were actually realized.

{00389179.DOCX.1}

19

**WHEREFORE,** Plaintiffs hereby demand:

1. Compensatory damages,

2. Punitive damages,

3. Return of all investment monies with interest,

4. Attorneys' fees, court costs and other relief as this Court deems just..

## FIFTH COUNT

### High Street Property – Ownership Fraud

113.    Plaintiffs were fraudulently induced by Defendant Rohit Punj into investing money in the project involving the High Street Property with the misrepresentation that they would become vested as actual property owners.

114.    Instead, Rohit Punj did not arrange for them to become property owners and conspired with Eileen Zullo and others to make her a partial property owner to the detriment of Plaintiffs.

**WHEREFORE,** Plaintiffs hereby demand:

1. Compensatory damages,

2. Punitive damages,

3. Return of all investment monies with interest,

4. Attorneys' fees, court costs and other relief as this Court deems just.

## SIXTH COUNT

### Vector Global Holding Fraud Claim

115.    Pursuant to their investments in Vector Global Trailers, Plaintiffs were entitled to receive the correct proportional share of the profit from the enterprise.

116.    Defendants defrauded Plaintiffs by falsely inducing Plaintiffs to invest monies and then by falsely underreporting to Plaintiffs the amounts due and owing to them.

**WHEREFORE,** Plaintiffs hereby demand:

1. Compensatory damages,

2. Punitive damages,

3. Return of all investment monies with interest,

4. Attorneys' fees, court costs and other relief as this Court deems just.

## SEVENTH COUNT

### Vector Global Holding – Contractual Claim

117.    Pursuant to their investments in Vector Global Trailers, Plaintiffs were contractually entitled to a particular share of profits of the enterprise.

118.    Defendants have breached their contractual obligations by failing to pay such sums as due.

**WHEREFORE,** Plaintiffs hereby demand:

1. Compensatory damages,

2. Punitive damages,

3. Return of all investment monies with interest,

4. Attorneys' fees, court costs and other relief as this Court deems just.

## EIGHTH COUNT

### 30 Burger Investment Franchise Loan

119.    Rohit Punj induced the Plaintiffs to "invest" in a 30 Burger franchise in Princeton, New Jersey in the form of providing a loan of $109,500.

120.    Plaintiffs are entitled to a return of their principal with agreed-upon interest.

{00389179.DOCX.1}

**WHEREFORE,** Plaintiffs hereby demand:

1. Compensatory damages,

2. Punitive damages,

3. Return of all investment monies with interest,

4. Attorneys' fees, court costs and other relief as this Court deems just.

**NINTH COUNT**

**Breach of Fiduciary Duty**

121.    As to each of the above-referenced ventures, Rohit Punj has a fiduciary duty to the Plaintiffs.

122.    For the reasons set out herein, Defendant Rohit Punj violated said duty.

**WHEREFORE,** Plaintiffs hereby demand:

1. Compensatory damages,

2. Punitive damages,

3. Return of all investment monies with interest,

4. Attorneys' fees, court costs and other relief as this Court deems just.

**TENTH COUNT**

**Unjust Enrichment**

123.    As to each of the above-referenced ventures, the Defendants were unjustly enriched at the expense of the plaintiffs.

**WHEREFORE,** Plaintiffs hereby demand:

1. Restitution of sums unjustly enriching the Defendants,

2. Punitive damages,

3. Return of all investment monies with interest,

{00389179.DOCX.1}

4.   Attorneys' fees, court costs and other relief as this Court deems just.

## ELEVENTH COUNT

### Demand For Accounting

124.    As to each of the above-referenced ventures, Defendant Rohit Punj is obligated to supply to Plaintiffs a full and complete accounting of the business and financial activities of said entity.

**WHEREFORE,** Plaintiffs hereby demand:

1.   An order for a formal accounting.

2.   Other relief as the Court deems just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues of the case in accordance with Fed. R. Civ. P. 38(b).

## RESERVATION OF RIGHTS

Plaintiff reserves the right to file such specific amendments and/or additional claims as are applicable hereinafter to this action as the same are subsequently ascertained.

## LOCAL CIVIL RULE 11.2 CERTIFICATION

I hereby certify that, to my knowledge, the matter in controversy is not the subject of any other action or proceeding pending in any court or in any pending arbitration or administrative proceeding.

{00389179.DOCX.1}

## DESIGNATION OF TRIAL COUNSEL

Michael J. Sullivan, Esq. is hereby designated as trial counsel in reference to the above matter.

ELLENOFF GROSSMAN & SCHOLE LLP

Attorneys for Plaintiffs, Dr. Vijay Vasudev,
Dr. Kanchan Vasudev, Dr. Manu Vasudev and
Tarun Vasudev

By:   */s/ Michael J. Sullivan, Esq.*
Michael J. Sullivan
Glen A. Sproviero

Dated:  October 16, 2015